UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA J. DRAYTON,

       Plaintiff,

v.                                       Case No. 1:05-CV-545
                                       Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI).

Plaintiff was born on May 21, 1960 and completed the ninth grade (AR 62, 95, 458).[1] Plaintiff filed the present application for SSI on September 10, 2002, stating that she became disabled on September 4, 1994 (AR 20, 62). By way of background, plaintiff filed an earlier application for SSI on June 23, 1999 (AR 39). The 1999 application was denied and proceeded to an administrative hearing before an administrative law judge (ALJ), where plaintiff was found not disabled on April 27, 2001 (AR 39-45). On November 12, 2002, the Appeals Council determined that there was no basis for granting an appeal (AR 20). Plaintiff did not appeal the denial of her 1999 SSI application to a federal court.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

In the 2002 application, plaintiff identified her disabling conditions as emphysema, blood pressure, arthritis and anxiety attacks, and stated that she had not worked within the last 15 years (AR 89-90). After administrative denial of plaintiff's claim, an ALJ reviewed plaintiff's claim *de novo* and entered a decision on February 24, 2005, finding that plaintiff was not disabled (AR 20-30). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).[2]

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work

---

[2] The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

The ALJ determined that the doctrine of res judicata applied to the April 27, 2001 decision (AR 21).  Accordingly, the ALJ confined his decision to the time period commencing April 27, 2001 through February 24, 2005 (AR 21).  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 28). Second, the ALJ found that she suffered from severe impairments of emphysema/COPD, anxiety/panic disorder, diabetes mellitus and obesity (AR 28). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 29).  The ALJ decided at the fourth step that plaintiff:

> retains the residual functional capacity to lift a maximum of ten pounds, stand and walk up to two hours, and sit for at least six hours in an eight-hour day, while alternating sitting and standing at will.  She should never climb ladders, scaffolds, or ropes; and only occasionally climb ramps or stairs.  She should avoid extremes of heat and cold and even moderate exposure to fumes, odors, dust, gases, or respiratory irritants.  Secondary to her anxiety disorder/panic attacks, she is limited to simple unskilled work with an SVP rating of 1 or 2 that requires only minimal contact with co-workers and brief and superficial contact with the public, that does not require frequent significant changes or adaptations, and that does not involve production quotas or keeping pace with other co-workers.

(AR 29). The ALJ concluded that plaintiff had no past relevant work and a limited education (AR 29). The ALJ further found that plaintiff's allegations regarding her limitations were not totally credible (AR 29).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of sedentary work (AR 29). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following unskilled, sedentary jobs in the Lower Peninsula of the State of Michigan: assembler (2,700 jobs); visual inspector (1,500 jobs); sorter/packager (3,000 jobs); and information clerk (3,200 jobs) (AR 29). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 29-30).

## III. ANALYSIS

Plaintiff raises four issues on appeal.

### A. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician.

First, plaintiff contends that the ALJ did not accept the opinion of plaintiff's treating physician, Kenneth Dudley, M.D. Plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating her alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of physicians, particularly where the statements are unsupported by detailed objective criteria and

5

documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Here, the ALJ did not give controlling weight to Dr. Dudley's opinion expressed in a physical assessment form completed on July 13, 2004, which stated that plaintiff was "totally disabled" due to COPD, depression, social anxiety disorder and attention deficit disorder (ADD) (AR 26-27, 422-30). Although Dr. Dudley was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled'). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is

the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

The ALJ's residual functional capacity determination was generally consistent with the determinations reached by Dr. Dudley in his July 13, 2004, residual physical functional capacity assessment (AR 422-30). For example, the ALJ agreed with Dr. Dudley: that plaintiff had the residual functional capacity to lift a maximum of ten pounds; that she should never climb ladders, scaffolds, or ropes; that she should avoid even moderate exposure to fumes, odors, dust, gases, or respiratory irritants; that she had an unlimited ability to push and/or pull; and that her anxiety disorder/panic attacks should limit her contact with co-workers and the public (AR 29, 422-30). The ALJ, however, did not agree with Dr. Dudley's assessment that plaintiff suffered from disabling ADD and COPD.

First, the ALJ did not find that plaintiff suffered from a severe impairment of ADD. The ALJ found that plaintiff did not complain of suffering from ADD and that this impairment was not mentioned in the doctor's treating notes (AR 26-27).

Second, the ALJ did not adopt Dr. Dudley's assessment that plaintiff's COPD was disabling and limited her ability to sit, stand or walk for any amount of time during an eight-hour workday (AR 424). Dr. Dudley supported his assessment with the observation that "she becomes dyspenic with minor exertion" (AR 424).[3] In rejecting the doctor's conclusion that the COPD is work preclusive, the ALJ reviewed the relevant medical record commencing on April 27, 2001 (AR 22-27). The ALJ noted that plaintiff had been prescribed medication for COPD (Albuterol,

---

[3] "Dyspenic" pertains to dyspnea, which is "difficult or labored breathing." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at 518-19.

7

Azmacort, Detrol and Atrovent), had objective medical evidence of moderate COPD, and testified that she cannot sit, stand or walk for prolonged periods and had shortness of breath when walking or climbing stairs (AR 23-24). However, the ALJ observed that plaintiff was morbidly obese (5'2" tall and weighing over 250 pounds), did not follow her doctor's recommendation to control her diet, lose weight and exercise, and continued to smoke cigarettes despite her history of emphysema, obstructive lung disease, bouts of bronchitis and advice from doctors to quit (AR 25). The ALJ noted that in February 2004, plaintiff called Dr. Dudley's office to get "something for her lungs" but failed to show up because she was too busy (AR 25, 220). In addition, the ALJ found that plaintiff was able to take care of her two children, ages 7 and 13 (AR 26, 111).

Based on this record, the ALJ concluded that plaintiff's lung problem "was not very severe or functionally limiting" (AR 25).[4] The ALJ agreed with the restriction as determined by the DDS physician that plaintiff could walk up to two hours and sit for at least six hours in an eight-hour day, and could alternate sitting and standing at will (AR 29, 120). Accordingly, the ALJ has provided a sufficient explanation for not adopting Dr. Dudley's opinion that plaintiff is disabled.

### B. The ALJ wrongly determined that plaintiff did not follow medical advice.

In reaching his decision, the ALJ quoted from the decision in *Sias v. Secretary of Health and Human Services*, 861 F.2d 475 (6th Cir. 1988), which reads in its entirety as follows:

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces a myriad of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege -- but if he is not truly disabled,

---

[4] The court notes that in December 2001, plaintiff told her doctor that she is very short of breath after walking "about a mile a day" (AR 157). Plaintiff's ability to walk "about a mile a day" is inconsistent with the claim that her COPD prevents her from engaging in even sedentary work activity.

8

>he has no right to require those who pay Social Security taxes to help underwrite the cost of his ride.

*Sias*, 861 F.2d at 480.

As a general rule, an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability. *Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1111 (6th Cir. 1984). *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1011(8th Cir. 2005) (diabetic claimant's non-compliance with dietary regime and medication is inconsistent with an allegation of disability). However, the ALJ did not deny plaintiff's claim based upon the non-compliance regulations, 20 C.F.R. §§ 404.1530, 416.930 ("Need to follow prescribed treatment"), which provide that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work" and that the failure to do so without good reason will result in a denial of benefits. 20 C.F.R. §§ 404.1530(a), (b); 416.930(a), (b). Rather, the ALJ apparently considered plaintiff's noncompliance with medical instructions as a credibility issue. *See, e.g., Raney*, 396 F.3d at 1010-11 (evidence of missed medical appointments and noncompliance are relevant to claimant's credibility); *Cross v. Commissioner of Social Security*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005) (noncompliance with medical treatment plan is a basis for discounting a claimant's credibility).

An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of

9

disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

Here, the ALJ could properly discount plaintiff's credibility regarding the extent of her limitations based upon her failure to follow doctor's instructions. At the time of her hearing, plaintiff stated that she weighed 274 pounds and had gained weight over the last few years (AR 457). The court agrees with the ALJ that "[i]t was at least reasonable for the ALJ to conclude that, had [p]laintiff's limitations on sitting, standing, walking, and climbing stairs due to shortness of breath and obesity been as extreme as she alleged, she would have made greater attempts . . . for weight loss and diabetic control, to stop smoking, and to keep all appointments with the doctor (AR 24)." In January 2004, plaintiff's cardiologist, Gregory L. Miller, M.D., observed that plaintiff did not seem willing or able to discontinue tobacco use (AR 236). In February 2004, Dr. Miller stated that plaintiff had "probable mild provokable ischemia" and that she "would be well served by discontinuance of tobacco use, weight loss, and exercise" (AR 357). Dr. Dudley encouraged plaintiff to quit smoking (AR 206, 231). In addition, medical records from February 2004 indicate that plaintiff was not following her cholesterol lowering diet (AR 221).

The record does not reflect that plaintiff has refused to follow all medical instructions or treatments. However, plaintiff is seeking benefits on the basis that she suffers from medical conditions so severe that she cannot perform even sedentary work. Under these circumstances, one would expect plaintiff to use every medical treatment at her disposal to better her medical condition. Plaintiff's failure or refusal to do so suggests that her condition is not as dire as she alleges. *See, e.g., Sias*, 861 F.2d at 480 (claimant's failure to lose weight and stop smoking was not consistent

with the lifestyle of a person suffering from intractable pain). Accordingly, the court concludes that the ALJ's credibility determination is supported by substantial evidence.

### C. The ALJ did not have substantial evidence to support his finding that plaintiff could have performed a substantial number of sedentary jobs.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff contends that the ALJ's hypothetical question failed to account for her "urinary frequency issues" and mental limitations (i.e., a GAF score of 45).[5] The medical record contains limited references to plaintiff's urinary frequency or incontinence during the relevant time

---

[5] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id.* at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

11

period. In a telephone message to Dr. Dudley in October 2003, plaintiff requested a medical excuse for jury duty because she experiences panic attacks and wets her pants (AR 269). Dr. Dudley did not reference the incontinence in the medical excuse, stating that plaintiff "[i]s medically unable to perform jury duty due to social phobia and panic attacks" (AR 332). In addition, Dr. Dudley did not include urinary frequency or incontinence as a limitation in his physical assessment form (AR 422-30). Because the record contains no basis for including limitations related to plaintiff's urinary frequency or incontinence during the relevant time period, the ALJ did not err by failing to include this limitation in the hypothetical question posed to the vocational expert (VE).

A consulting psychologist examined plaintiff on October 24, 2002, and determined that she suffered from panic disorder with agoraphobia (AR 110-116). At that time, the ALJ assigned her a GAF score of 45 (AR 113). Plaintiff's GAF score of 45 lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34. As an initial matter, the Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). "[T]he determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted). *Hardaway*, 823 F.2d at 927.

Other evidence in the record did not support the finding that plaintiff suffered from a disabling mental condition. The ALJ noted that plaintiff suffered from "primarily self-described

anxiety attacks" (AR 25). The record does not reflect that Dr. Dudley referred plaintiff to a mental health specialist. In May 2003, the doctor found that takes Ativan as needed for panic attacks, and that "[s]he only uses a few each year" (AR 25, 303). In addition, a non-examining DDS physician reviewed the medical record and determined that plaintiff was, at most, moderately limited by her mental condition (AR 127-46).

The ALJ found that plaintiff's severe impairments included an anxiety/panic disorder (AR 28). Because plaintiff suffered from anxiety disorder/panic attacks, the ALJ's residual functional capacity limited her to unskilled work "that requires only minimal contact with co-workers and brief and superficial contact with the public, that does not require frequent significant changes or adaptations, and that does not involve production quotas or keeping pace with other co-workers" (AR 29). The ALJ's hypothetical questions posed to the VE included these restrictions (AR 479-83). In response to the hypothetical questions, the VE identified an unexhaustive list of jobs including assembler (2,700 jobs), visual inspector (1,500 jobs), sorter/packager (3,000 jobs) and information clerk (3,200 jobs) (AR 479-83).

Finally, plaintiff points out that the VE testified "that [p]laintiff could not work given her urinary frequency issues." Plaintiff's Brief at 14. Plaintiff is apparently referring to the VE's testimony that the need to use the bathroom every hour of every day would be work preclusive (AR 481-82). However, this testimony is inapplicable to plaintiff. First, the ALJ did not find that plaintiff suffered from a severe impairment of incontinence or bladder problems that required her to use the bathroom every hour. Second, while the VE testified that the need to use the bathroom every hour of every day would be work preclusive, the VE also testified that "ready access to a bathroom" to

be used several times during the work day is not a problem (AR 481-82). Thus, while plaintiff may have "urinary frequency issues," this condition, in and of itself, is not work preclusive.

Based on this record, the ALJ's determination that plaintiff could perform some 10,400 sedentary jobs is supported by substantial evidence.

### D. Request for remand

Finally, plaintiff contends that she is entitled to a sentence-six remand to consider a sworn statement from Dr. Dudley taken on April 19, 2005 (AR 437-50). The ALJ did not review this statement, which was made nearly two months after the decision and nine months after the hearing. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam).[6] In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

The standard in determining whether to remand a claim for the consideration of new evidence is governed by statute:

> The court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . .

---

[6] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

42 U.S.C. § 405(g)(emphasis added).

"In order to obtain a remand for further administrative proceedings, Section 405(g) clearly requires a showing of both materiality and good cause." *Cline v Commissioner of Social Security,* 96 F.3d 146, 149 (6th Cir. 1996) (emphasis added). Good cause is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

To the extent that plaintiff seeks a sentence-six remand for further consideration of this matter, such a request should be denied because plaintiff has not shown good cause for failing to present this evidence to the ALJ. The good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process). Dr. Dudley's statement was taken after the ALJ denied plaintiff's claim and was submitted to the Appeals Council to support plaintiff's request for a review of the ALJ's decision (AR 433-50). This statement did not arise in the course of continued medical treatment but was generated for the purpose of attempting to prove disability. *See Koulizos*, 1986 WL 17488 at *2.

Finally, even if plaintiff had good cause for failing to present this evidence, Dr. Dudley's sworn statement is not material. Dr. Dudley's statement did nothing more than re-state his conclusion and belief that plaintiff is disabled under the Social Security Act. As the court previously discussed, the determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston*, 736 F.2d at 367. While the court has great respect for the doctor's opinion, this is simply not the type of evidence that would have persuaded the Commissioner to reach a different disposition of the disability claim. *See Sizemore*, 865 F.2d at 711. Accordingly, this matter is not subject to a sentence-six remand.

### IV.   Recommendation

I respectfully recommend that the Commissioner's decision affirmed.

Dated: May 30, 2006                    /s/ Hugh W. Brenneman, Jr.
                                        Hugh W. Brenneman, Jr.
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).